# Cases

# FIRST DEPARTMENT,

AT

## GENERAL TERM

### March, 1886.

---

## THE PEOPLE OF THE STATE OF NEW YORK EX REL. CHARLES T. HARVEY, APPELLANT, v. EDWARD V. LOEW, COMPTROLLER OF THE CITY OF NEW YORK, RESPONDENT.

*Construction of elevated railroads in city streets — power of the legislature to authorize it to be done for experimental purposes — compensation must be made for the use of the street — a franchise or right cannot be given to an individual by a private or local act.*

Chapter 554 of 1885 amends chapter 489 of 1867, and the acts amendatory thereof, so as to authorize the construction of a new illustrative section of an elevated railway on some duly authorized street in the city of New York, to be not less than one-fourth of a mile in length, and provided with serial traction cables and testing cars of full working size, and to conform to the regulations as to structure and motive power provided in the former acts. It declares that "said section shall be constructed and the said experiments conducted upon the plans and under the direction of Charles T. Harvey, the engineer in charge of constructing the first experimental section hereinbefore mentioned." It then further provides that the comptroller is authorized to pay a sum equal to one-third of the amount of a fund (paid to the comptroller by the elevated roads referred to in the said acts, being five per cent upon their net income from passenger traffic, as a compensation to the corporation for the use of its streets) — "forthwith to the order of said engineer, for the purpose of defraying the expenses of experiments as to said motive power now in progress, and for making surveys and other preparations for building said section."

Upon an application for a peremptory *mandamus* to compel the comptroller to pay over one-third of the said fund to the relator:

*Held*, that conceding the power of the legislature to authorize the construction of a railway in a public street for experimental purposes, and not for public use and traffic, yet this could not be done without making compensation to the persons interested therein for the damages thereby sustained, and that the omission of any such provision from this act rendered it unconstitutional and void.

That if it were held that the section of railway which was to be constructed under the act was intended for public use and traffic, then the act was unconstitutional, in that it conferred a franchise or right upon a private individual by a local and private act in violation of the Constitution of the State.

Appeal from an order of the Special Term, denying a motion for a peremptory *mandamus*.

*Abram Wakeman*, for the appellant.

*D. J. Dean*, for the respondent.

Davis, P. J.:

By section 1 of chapter 489 of the Laws of 1867 it was enacted that the West Side and Yonkers Patent Railway Company, a company organized under the general railroad law of 1850, and the acts amendatory thereof, be authorized and empowered to commence and proceed with the construction of an elevated railway in the counties of New York and Westchester in the manner and upon a route therein specified. The third section of the act authorized the company " to commence the construction of an elevated railway at the southerly extremity of Greenwich street, near Battery place, in the city of New York, and extend the same northerly along Greenwich street for a distance of half a mile in length," which the act calls an experimental section. It then provides for certain experimental tests to be made upon that section under the inspection of commissioners appointed by the governor of the State and the local authorities of the city, and upon their certificate of approval of the experimental section, to be made and filed as prescribed in the act, the fourth section authorized the company to proceed and construct its railway along both sides of Greenwich street and Ninth avenue to a point designated. The ninth section provides that the company, after its road should be constructed and in operation should pay " a sum of five per cent of the net income of said railway from passenger traffic upon Manhattan

Island, as aforesaid, into the treasury of the city of New York in such manner as the legislature may hereafter direct, as a compensation to the corporation thereof for the use of the streets thereof."

By chapter 855 of the Laws of 1868 the time for the construction of the experimental road was extended; and it was provided by section 2 of the act that the five per cent required by section 9 of the act of 1867 should be paid in the month of January in each year, and quarter annually thereafter, to the comptroller of the city of New York, for the purpose of being expended in the improvement of the condition or appearance of the streets or parts of streets or avenues or places through which said railway shall be constructed, by preserving or transplanting shade trees, or by other embellishments or improvements of awnings and sidewalk structures which may tend to render the general condition and appearance of the streets aforesaid satisfactory to the citizens dwelling in or frequenting the same, and power was thereby given to the commissioners provided for in the act to expend the revenues received from the specified percentage in such manner as they shall deem best to promote the object aforesaid, subject to the official approval of the mayor of the city of New York.

And the comptroller was directed thereby to keep said revenue distinct and apart from all other funds, and to pay out of it warrants when signed by the commissioners and accompanied by vouchers of the expenditures indorsed as approved by the mayor; and the vouchers for the compensation of the commissioners when approved by the governor were directed to be paid from the same fund in like manner. Under the provisions of this act it appears by the petition in this case that a sum of money was paid in to the comptroller, which on the 13th of June, 1885, amounted to $168.099, and it would seem that that sum remains in the hands of the comptroller subject to the provisions of the acts of 1867 and 1868. In the interval that has elapsed since the passage of those acts it appears by chapter 595 of the Laws of 1875 (in which it was so recited) that the New York Elevated Railway Company have acquired by purchase under mortgage of foreclosure and sale and other transfer, all the rights, powers, privileges and franchises which were conferred upon the West Side and Yonkers Patent Railway Company, by the acts of 1867 and 1868 above referred to, and the New York Elevated

Railway Company, was thereby "confirmed in the possession and enjoyment of the said rights, powers, privileges and franchises as fully and at large, as they were so granted in and by the acts aforesaid to the said West Side and Yonkers Patent Railway Company."

By chapter 554 of the Laws of 1885, which is the act under which the question in this case arises, section 2 of the act of 1868 is amended so as to provide that the construction company therein mentioned " or its successor shall, in the month of January in each year and quarter annually thereafter, pay to the comptroller of the city of New York, five per cent of its net income for the purpose of being expended in the improvement of the condition or appearance of the streets or parts of streets or avenues or places through which elevated railroads may hereafter be located or constructed, by demonstrating the practicability of making said structures more ornamental in appearance and by introducing such new or improved methods of operating the same as may tend to obviate such objectional features thereof as injuriously affect the condition of such streets or avenues. To this end a new illustrative section of said form of railway shall be erected on some duly authorized street, in said city, to replace the experimental section referred to in the first section of this act and subsequently removed, and to enable the resumption and completion of the experiments required in said section, to ascertain the best form of motor as therein contemplated, and the expenses incident thereto, shall be paid from said fund as hereinafter provided."

The effect of this amendment is to authorize and require a new " illustrative section " of the railway to be constructed under the acts of 1867 and 1868 on some " duly authorized street " in the city to replace the experimental section referred to in those acts, which in this act is stated to have been subsequently removed. The act declares that : " Said new illustrative section shall not be less than one-fourth of a mile in length and shall be provided with serial traction cables and testing cars of full working size, and shall conform to the regulations as to structure and motive power as provided in the act to which this act is supplementary." It then declares that " said section shall be constructed and the said experiments conducted upon the plans and under the direction of Charles T. Harvey, the

engineer in charge of constructing the first experimental section hereinbefore mentioned."

The illustrative section thus authorized is, as we understand the section, to be a new and independent elevated railroad of not less than a quarter of a mile in length, erected on some duly authorized street of the city, and is not necessarily connected with any existing road, nor owned by any existing railroad corporation, nor to be used for the purposes of public traffic, but to be simply experimental, to illustrate the working of forms of motors in order to ascertain the best form as contemplated in the original act. It is not a public but a private road, having in contemplation only experiments to illustrate the value of motors and other improvements, doubtless with the purpose, by establishing such value, to induce their introduction and use on other railroads. This is shown by the provisions of the act requiring the governor, the State engineer and the mayor of the city to designate a board of inspecting engineers, who shall proceed to inspect, test and report on the features of said illustrative section and the operative merits of its motive power, a copy of which report is to be filed with the comptroller, with the indorsement thereon of the several opinions of the governor, State engineer and mayor aforesaid as to the comparative merits of the illustration so made ; and in case they, or a majority of them, shall therein certify that in their judgment the said new illustrative section has demonstrated or developed material improvements in the methods of constructing or operating elevated railroads in said city, as compared with the forms or motive power of those then in use therein, and as tending to improve the appearance or condition of the streets or avenues herein specified, the said comptroller shall pay to the order of the said constructing engineer the amounts remaining in or accruing to said fund until the legislature shall otherwise direct, as compensation to him for services rendered, and to enable him to continue said experiments toward attaining the highest possible perfection for the designs of such railways, and of benefiting the appearance and condition of the streets and avenues of said city in connection therewith.

The act also provides that the "section shall be constructed and the said experiments conducted upon the plans and under the direction of Charles T. Harvey, the engineer in charge of constructing the first

experimental section." It then declares that the comptroller is "authorized and directed to pay a sum equal to one-third of the amount of said fund now on deposit with him or in his custody forthwith to the order of said engineer, for the purpose of defraying the expenses of experiments as to said motive power now in progress, and for making surveys and other preparations for building said section."

It is to require the payment of this first sum to Mr. Harvey that this *mandamus* is asked for. The court below put the denial of the *mandamus* upon the ground in substance that the relator did not show that he had taken any steps except filing the bond required by the act for the faithful performance of his work, and did not aver or make proof that he was doing or about to do or was willing or authorized to do the work referred to or had a permit to do it.

These grounds, we think, were altogether too narrow to uphold the order denying the writ, because the language of the act is very explicit that the sum named shall be paid to Mr. Harvey forthwith *for the purpose of defraying the expenses of experiments as to said motive power now in progress and for making surveys and other preparations for building said section.* The obvious purpose of this provision is to place the engineer forthwith in funds, and to furnish him in advance with the necessary means to launch the experiment by taking the preliminary steps necessary to that end. The section then proceeds to require him before he receives the moneys to execute the prescribed bond in the sum of $100,000, with good and sufficient sureties, to be approved by the chief justice of the Court of Common Pleas in said city, conditioned upon the full performance of the construction work herein provided for. Collating these several sections and reading them together seems to leave no doubt that the intent of the legislature was to furnish a fund, limited to one-third of the money in the comptroller's hands, so that the work may be commenced by surveys and preparations and the existing experiments as to motive power continued. If the act, therefore, can be held to be constitutional, we think there is no other mode of carrying out the legislative intent, as expressed therein, than by requiring the first payment to be made upon the filing of the prescribed bond, and the question

which must control the application is the more important one of the constitutionality of the act. The power of the legislature under the Constitution to authorize by general laws the construction of railroads in the streets of the city of New York for the purpose of public travel and traffic need not be discussed, for it is manifest that it is not the purpose of this act to construct such a railroad. The construction of a railroad not less than a quarter of a mile in length, to be constructed under its provisions, is not authorized or intended for any purpose of public travel or traffic. It is a purely experimental section of railroad for the purpose of testing the qualities of motors and the superiority of such as Mr. Harvey may invent or use over those now in use upon the existing elevated railroads of the city, and to some extent to determine how the structures of elevated railroads may be improved in appearance and utility. The constitutional question is not, therefore, whether a railroad for purposes of public travel may be constructed as provided by this act, but whether the legislature can constitutionally authorize the streets of the city to be occupied by structures of the kind to be built under this act for the purposes expressed and intended by the act, to wit, for purely scientific experimental objects. Whether the fee of the streets be in the city or in the owners of the land abutting upon the streets, or whatever may be the relative rights of the city and such abutting owners in the road, does not seem to be an important fact for the purpose of determining the question now presented. It is enough that whether the city or the owner of the land owns the fee of roadway, it is nevertheless private property within the meaning of the constitutional inhibition against taking the same for public use without due compensation, and if the erection of an experimental railroad like that contemplated and authorized by this act can be said to be for a public use, because the experiments to be worked out upon it may result in public advantage when their value is illustrated, nevertheless it seems a clear proposition that the street cannot be taken for a demonstration of that kind without due compensation. No such compensation is provided for by the act, and if the act be constitutional Mr. Harvey will have the right and power, when the comptroller pays him the necessary funds, to proceed to construct his experimental section in any street at any length not less than a

quarter of a mile, and so occupy the same for such period of time as shall be necessary to accomplish the contemplated ends. This is not in our judgment a constitutional use of either public or private property without due compensation.

Again, if we consider the section of elevated railroad which may be constructed under this act to be a railroad within the general significance of that term, although it is devoted to mere illustrative experiments, nevertheless it is conferring a franchise or right upon a private individual by a local and private act of the legislature and not under the general law of the State. Such a privilege is one not sanctioned but condemned by the Constitution of the State; and though the court knows no reason to doubt that good results might follow from the carrying out of the provisions of this act, in some part of the city where private citizens might be little injured, yet we cannot say that the power exists to confer such privilege upon any citizen or corporate body under the restraint imposed on the legislature by the Constitution of the State. We do not discuss the question raised as to the power of the legislature to devote a fund required to be paid to the city by law as compensation for the use of its streets, first to the purposes mentioned in the amendatory act of 1868, and now to the experimental uses of the scheme devised by the act of 1885, as a legitimate exercise of constitutional power on the part of the legislature. That question is certainly one not free from grave doubt and may be a controlling one in the final disposition of this case if carried to the court of last resort. We are, however, for the reasons herein suggested, brought to the conclusion that the act under consideration is wholly void, because its scheme necessarily operates, if carried out, to transcend the limits imposed by the Constitution upon the legislature of the State.

The order should be affirmed, but without costs.

Daniels and Brady, JJ., concurred.

Order affirmed, without costs.